IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FEB 17 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| BRET ANDERSON, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:11cv1169 (LMB/JFA) |
| | ) | |
| RON LEGRAND, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

Before the Court is defendants' Motion for Dismissal of
Plaintiff Stuart Brower, Dismissal of Count III of Plaintiffs'
Complaint, and for Reconsideration of the Court's Order of
December 9, 2011 [Dkt. No. 27]. For the reasons discussed in
open court and below, defendants' motion will be granted.

## I. BACKGROUND

The plaintiffs, Bret Anderson, Stuart Brower, Julie Day,
Michael Harris, John Herlihy, Theodore Hooten, Chris Martin,
Cathy Pugsley, Robert Sciabica, Christine Sciabica, and Brian
Viola, are eleven purchasers of unimproved residential lots in a
South Carolina subdivision named Legacy Estates at Barefoot
Landing. Five of these plaintiffs, Chris Martin, Robert and
Christine Sciabica, Cathy Pugsley, and Brian Viola, are
residents of Virginia. Compl. ¶¶ 1-10, 50-59. Defendant Legacy

Development SC Group, LLC ("LDSCG" or "Legacy") is a Florida
limited liability company with its principal place of business
in Florida.  Id. ¶ 11; LeGrand Decl. ¶ 2.  Individual defendant
LeGrand is the president of LDSCG and a resident of Florida.
LeGrand Decl. ¶¶ 1-2.  Total Realty Management, LLC ("TRM"), at
times known as "Carolina Waters," had its offices in Woodbridge,
Virginia.  Compl. ¶ 14.  TRM is not a party to this lawsuit but
played an integral role in the allegations of the complaint.
See id.[1]  LDSCG was the developer for Legacy Estates at Barefoot
Landing.  Id. ¶¶ 16-17.

According to the complaint, LeGrand "controlled" another
limited liability company called Mountain Country Partners, LLC
("MCP"), which took out a $3,000,000 loan from TRM.  Compl.
¶ 24.  This loan was secured by a note payable to TRM at TRM's
Woodbridge offices.  Id.  Plaintiffs allege that LeGrand agreed
with two TRM employees, Mark Dain and Mark Jalajel, that TRM
would be paid on the MCP note by TRM selling Legacy lots and
keeping the proceeds above a certain sale amount.  Id. ¶ 25.

---

[1] TRM and its employees have been accused elsewhere of extensive
fraudulent conduct to which some employees have pled guilty as a
result of their criminal involvement.  See Pls.' Opp'n No. 1 at
5 n.5.  Currently pending in this court is another lawsuit
against TRM and various employees as well as several banks and
trustees, alleging a scheme involving inflated appraisals,
multiple fake sales of a single lot, and violations of the
Interstate Land Sales Full Disclosure Act and the South Carolina
Unfair Trade Practices Act.

Accordingly, LDSCG and LeGrand "arrang[ed] to sell lots to Plaintiffs through their agent TRM."  Id. ¶ 32.

Plaintiffs further allege that "[b]ecause the price at which the lots in Legacy could be sold would not provide for the repayment of the MCP loan and leave LeGrand with any proceeds, LeGrand needed to concoct a scheme to increase the prices at which LDSCG would sell the Legacy lots so that he would have something left after he paid TRM."  Id. ¶ 26.  In furtherance of this plan, LeGrand, by agreement with Dain and Jalajel of TRM, allegedly orchestrated a sham transfer of Lot 31 in Legacy at an intentionally inflated price to a trust under which he was a beneficiary, "to concoct a transaction which could be used by an appraiser as a comparable."  Id. ¶ 27(a).  Lot 31 was transferred back to LeGrand/LDSCG approximately two years later. Id. ¶ 30.  LeGrand also purportedly arranged for an actual sale of Lot 5 in Legacy to a Lauren Wingate, again at an inflated price and again to create a comparable, where $101,000 of the amount owed by Ms. Wingate was immediately excused after settlement.  Id. ¶ 28.  According to plaintiffs, "TRM and LDSCG intended that the note be executed for the sole purpose of supporting the higher sales price which could be used as a comparable sale in an appraisal."  Id.[2]

---

[2] Plaintiffs generally allege that TRM engaged in a scheme in which it purchased lots from developers at a market rate and

Each of the plaintiffs purchased his or her property through TRM. Compl. ¶¶ 50-59. Plaintiffs allege that TRM acted as LDSCG's agent in selling the Legacy lots, which "is evidenced by...the agreement between TRM, Legrand, and LDSCG to sell lots owned by LDSCG to Plaintiffs through TRM, the LDSCG Purchase Agreements distributed to Plaintiffs by TRM representatives, and the HUD-1 settlement statements reflecting that LDSCG was the actual seller of the lots TRM solicited Plaintiffs into purchasing." Id. ¶ 36. The closings on plaintiffs' properties occurred in South Carolina. Id. ¶ 60. Generally, within a week after their closings, each plaintiff received from TRM a lump sum worth eighteen months of interest payments; however, these payments were not reflected in the sales contracts, settlement statements, deeds, or tax stamps. Id. ¶¶ 39, 50-59. The sales contracts that plaintiffs received also did not include notice of a seven-day right to rescind, nor did they state that plaintiffs had a right to rescind if they did not receive a Property Report mandated by the Interstate Land Sales Full Disclosure Act ("ILSA"). Id. ¶¶ 45-46. After the closings on

---

resold them at inflated prices by using "bogus appraisals" that were based on manufactured comparables pricing. See Compl. ¶¶ 20-22. Based on the settlement statements in this case, LDSCG, not TRM, was the owner of plaintiffs' properties at the time of the sales.

plaintiffs' properties, TRM was paid a "commission" on each sale as payment on the MCP note.  See Compl. Exs. 15 and 16.[3]

In Count I of their three count complaint against LeGrand and LDSCG, plaintiffs seek damages under ILSA on the ground that they were not advised of their rights under 15 U.S.C. § 1273(b) or (c), did not receive the required Property Reports, and because "LeGrand and LDSCG violated ILSA by making materials [sic] misrepresentations and/or omissions described above and for participating in a device, scheme or artiface to defraud." Id.  ¶¶ 71-72, 74-75.

In Count Two, plaintiffs seek damages under the South Carolina Unfair Trade Practices Act ("SCUTPA") due to defendants' alleged "unfair and deceptive practices," including obtaining false appraisals, inflating the value of comparables, misrepresenting the value of the Legacy properties, including false information on the HUD-1 Settlement Statements, and issuing contracts that did not accurately represent the terms of plaintiffs' contracts.  See Compl. ¶ 82 for a full list of bases

---

[3] The settlement statements indicate that commissions were paid to Gabriel Real Estate Financial Services, Inc.  According to plaintiffs, TRM used Gabriel as a sham intermediary to ensure that no TRM information would appear on the settlement statements.  See Compl. ¶¶ 37, 61.  Plaintiffs attached to their opposition to the first motion to dismiss several pages of Carolina Waters' bank statements that show a transfer into Carolina Waters accounts from "Gabriel Financial Real Es."  See Pl.'s Opp'n No. 1 Ex. 1 [Dkt. No. 7-1].

for the SCUTPA count.  This count includes a request for attorneys' fees and treble damages.

Lastly, in Count Three, plaintiffs seek damages for statutory conspiracy under Va. Code Ann. §§ 499, et seq., on the ground that defendants "agreed to participate in TRM's fraudulent scheme by, among other things, knowingly and intentionally concealing material facts relative to the fair market value of the lots in Legacy [and] arranging for inflated appraisals for the lots sold to Plaintiffs"; as an overt act in furtherance of the conspiracy, plaintiffs allege that LeGrand arranged for the sham transfers/sales of Lots 5 and 31.  Compl. ¶¶ 91-92.

On December 9, 2011, the Court denied defendants' first motion to dismiss for lack of personal jurisdiction or for improper venue due to defendants' role as seller/developer of the subject properties and their alleged connections with Virginia-based TRM, the Virginia real estate company that executed the purportedly fraudulent sales.  On December 12, 2011, defendants filed an answer and have now filed a second motion to dismiss in which they seek to dismiss all counts asserted by plaintiff Brower as well as Count III (statutory conspiracy) as to all plaintiffs for failure to state a claim. They also ask the Court to reconsider its December 9, 2011 ruling finding personal jurisdiction over defendants, arguing

6

that a previous Virginia state court case dismissing defendants

for lack of personal jurisdiction has preclusive effect on this

Court.[4]

## II.   STANDARD OF REVIEW

A motion to reconsider under Fed. R. Civ. P. 60(b) may be

granted for:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

A movant under Rule 60(b) must also "demonstrate the

existence of a meritorious claim or defense" to the action.

Square Constr. Co. v. Wash. Metro. Area Transit Auth., 657

F.2d 68, 71 (4th Cir. 1981).

---

[4] Because defendants have requested that the Court reconsider its previous ruling on personal jurisdiction, this opinion will cite to pleadings from both the first and second motions to dismiss. Pleadings related to the first motion are indicated with the term "No. 1."

### III. DISCUSSION

#### A. Personal Jurisdiction

Defendants ask the Court to reconsider its December 9, 2011 ruling denying their motion to dismiss for lack of personal jurisdiction on the ground that the Court was not advised during its consideration of defendants' first motion to dismiss that the Prince William County Circuit Court previously ruled that there was no personal jurisdiction over these defendants in Virginia. According to defendants, plaintiffs' counsel has filed three other lawsuits in the Prince William County Circuit Court relating to the South Carolina property sales at issue in this action. In one of those cases, Day v. Dain, nine of the present eleven plaintiffs were named plaintiffs,[5] and the two defendants before this Court, LeGrand and Legacy, were among the named defendants.[6] There, as in this action, plaintiffs brought claims for violations of ILSA and SCUTPA.[7] Defendants challenged the personal jurisdiction of the Prince William County Circuit

---

[5] The two new plaintiffs in this action are Stuart Brower and Brian Viola.

[6] In addition to LeGrand and Legacy, defendants in the state case included Mark Dain and Michael McCracken (employees of TRM), Bank of America (financer of the purchases), and PRLAP, the trustee for Bank of America deeds of trust. See Defs.' Mem. Ex. D ¶¶ 1-16 (Prince William County Circuit Court complaint).

[7] In the Prince William complaint, the plaintiffs also brought claims for civil conspiracy against Bank of America only and sought a declaratory judgment that the notes were void for illegality.

8

Court, and, by an Order dated June 4, 2010, the court found that
it had no personal jurisdiction over either LeGrand or Legacy
and dismissed them without prejudice.[8]  The Virginia Supreme
Court subsequently denied review.  See Defs.' Mem. Ex. A
(Supreme Court docket information showing disposition of appeal
as "refused").  Accordingly, defendants contend that, under
principles of collateral estoppel, this Court is bound by the  ·
Virginia court decision and precluded from exercising personal
jurisdiction over these defendants.

        Inexplicably, plaintiffs' counsel, who was counsel in the
Prince William Court litigation, failed to bring the state court
action to this Court's attention in his response to the
defendants' first motion to dismiss.  Although he lamely
attempted during oral argument to explain why he failed to alert
the Court to the state court decision, his failure to cite to
that decision was a serious breach of counsel's obligation to be
candid with the Court.  Defense counsel, who were not involved

---

[8] The court's order of dismissal stated:

> The Defendant's [sic] (Ron Legrand and Legacy Development
> SC Group) motion to challenge jurisdiction is granted on
> all counts.  The above named defendants are hereby released
> from this case and the counts against them specifically are
> dismissed without prejudice.  Plaintiff's motion for leave
> to amend is denied with prejudice.

Defs.' Mem. Ex. B (Prince William County Circuit Court Order,
dated June 4, 2010) (emphasis added).

in the state court proceedings, explained that they were unaware

of the reasons for the dismissal when they filed their first

motion to dismiss.  Defendants further explained that their

current counsel "only obtained a copy of the Prince William

County Circuit Court ruling on December 30, 2011."  Reply at 11.

It is well-settled that

> [p]ublic policy dictates that there be an end of
> litigation; that those who have contested an issue shall be
> bound by the result of the contest, and that matters once
> tried shall be considered forever settled as between the
> parties.

Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525-

26 (1931).  The Supreme Court went on to hold that these

principles of preclusion apply "in every case where one

voluntarily appears, presents his case and is fully heard," and

accordingly, a litigant is, "in the absence of

fraud...thereafter concluded by the judgment of the tribunal to

which he has submitted his cause."  Id. at 526.

Moreover, the Full Faith and Credit Act, 28 U.S.C. § 1738,

provides that authenticated "records and judicial proceedings"

of a state court "shall have the same full faith and credit in

every court within the United States and its Territories and

Possessions as they have by law or usage in the courts of such

State, Territory or Possession from which they are taken."

Therefore, "[i]t is now settled that a federal court must give

to a state-court judgment the same preclusive effect as would be

10

given that judgment under the law of the State in which the

judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of

Educ., 465 U.S. 75, 81 (1984).  In Virginia,

> [u]nder the principle of collateral estoppel, the parties
> to the first action and their privies are precluded from
> litigating in a subsequent action any issue of fact
> actually litigated and essential to a valid and final[9]
> personal judgment in the first action.  A fundamental
> precept of common-law adjudication, embodied in the related
> doctrines of collateral estoppel and res judicata, is that
> a right, question or fact distinctly put in issue and
> directly determined by a court of competent jurisdiction
> cannot be disputed in a subsequent suit between the
> parties.

Burd v. Burd, 1997 Va. App. LEXIS 70, at *3-4 (1997) (quoting

Slagle v. Slagle, 11 Va. App. 341, 344 (1990)) (internal

quotations and alterations omitted).  Virginia also adheres to

the rule of mutuality, under which "[c]ollateral estoppel cannot

be asserted as a bar by a person who was a stranger to the prior

litigation." Dual & Assocs., Inc. v. Wells, 241 Va. 542, 545

(1991).

   A state court dismissal of an action on personal

jurisdiction grounds therefore has preclusive effect on

subsequent actions brought in federal court involving the same

---

[9] "[A] final judgment is one that disposes of the entire matter
before the court, giving all the relief contemplated and leaving
nothing to be done by the court except the ministerial execution
of the court's order or decree." McLane v. Vereen, 278 Va. 65,
70 (2009).  Because plaintiffs' appeal to the Virginia Supreme
Court has been rejected, the circuit court order is final. See
Weinberger v. Tucker, 510 F.3d 486, 494 (4th Cir. 2007).

parties.  See Baron v. Brackis, 312 F. Supp. 2d 808, 813-14
(E.D. Va. 2004) ("If...the defendant makes a special appearance
to contest questions of jurisdiction, the judgment is entitled
to full faith and credit when the second court's inquiry
discloses that those questions have been fully and fairly
litigated and finally decided in the court which rendered the
original judgment.") (quoting Durfee v. Duke, 375 U.S. 106, 111
(1963) (internal quotation marks omitted)); Pickert v. Cambridge
Savings Bank, 618 F. Supp. 286 (D.D.C. 1985) (holding that,
because preclusion principles apply to jurisdictional issues,
plaintiffs could not sue defendants in federal court when the
District of Columbia Superior Court previously found it lacked
personal jurisdiction in a case involving the same plaintiffs
and the same facts); Kitces v. Wood, 917 F. Supp. 338 (D.N.J.
1996) (collecting federal cases and holding that "[t]he
principles of collateral estoppel apply with equal force to a
prior determination by a court that it lacks personal
jurisdiction over a party"); Deckert v. Wachovia Student Fin.
Servs., Inc., 963 F.2d 816, 819 (5th Cir. 1992) (upholding
federal court's dismissal of lawsuit when state court had
previously found that it did not have personal jurisdiction over
the defendant); Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.,
770 F.2d 1228, 1233 n.7 (4th Cir. 1985) ("[W]here the defendant
makes a special appearance, and the jurisdictional issue has

been fully and fairly litigated and finally decided in the
original forum, the resulting judgment is entitled to full faith
and credit even as to the existence of personal and subject
matter jurisdiction."); cf. Commonwealth ex rel. Kilgore v.
Patriot Tobacco Co., 71 Va. Cir. 415 (2005) (dismissing counts
of a complaint as barred by direct estoppel when court in first
action found no personal jurisdiction based on same facts
present in later case); Burd, 1997 Va. App. LEXIS 70 (invoking
collateral estoppel principles to bar a challenge to an
unappealed, final decision on personal jurisdiction rendered by
a lower court).

     Plaintiffs' counsel has filed an untimely and cursory
opposition to the instant motion.  In responding to the
preclusion issue, counsel contends that one of the bases for
personal jurisdiction, which was raised both in the state court
and the instant action, was not "actually litigated" in the
Virginia state court and, accordingly, collateral estoppel does
not apply.  Specifically, counsel argues that defendants did not
litigate and the state court did not decide whether defendants
are subject to personal jurisdiction pursuant to 15 U.S.C.
§ 1719.

     To be "actually litigated," a claim must have been in issue
in the prior proceeding.  Scales v. Lewis, 261 Va. 379, 383
(2001).

> When an issue is properly raised, by the pleadings or
> otherwise, and is submitted for determination, and is
> determined, the issue is actually litigated within the
> meaning of this Section. An issue may be submitted and
> determined on a motion to dismiss for failure to state a
> claim, a motion for judgment on the pleadings, a motion for
> summary judgment..., a motion for directed verdict, or
> their equivalents, as well as on a judgment entered on a
> verdict. A determination may be based on a failure of
> pleading or of proof as well as on the sustaining of the
> burden of proof.  Restatement 2d of Judgments § 27 cmt. d.

On this issue, plaintiffs' counsel is again disingenuous.  He

contends that, because defendants did not specifically argue

that § 1719 did not confer personal jurisdiction over them, that

issue was not actually litigated in the state court proceeding.

However, in his pleadings before the state court, plaintiffs'

counsel explicitly urged the same bases for jurisdiction that he

does here.  Specifically, in his response to defendants' motion

challenging personal jurisdiction, counsel represented that the

"question presented is whether the actions of Legrand and LDSCG

are sufficient for this Court to exercise jurisdiction over

these respondents under Va. Code Ann. § 8.01-328.1 and/or 15

U.S.C. § 1719." Defs.' Mem. Ex. C at 1 (emphasis added).

Similarly, in his "assignments of error" to the Virginia Supreme

Court, plaintiffs' counsel argued that "[t]he trial court erred

in granting the Jurisdictional Motion because Petitioners

alleged sufficient facts for the trial court to have exercised

personal jurisdiction over Mr. Legrand and Legacy for the claims

under ILSA pursuant to Va. Code §§ 8.01-328.1, et seq. and/or 15

U.S.C. § 1709 [sic]," and went on to devote multiple pages to an argument for jurisdiction under ILSA. Id. Ex. A at 5, 9-11. Plaintiffs seek to establish personal jurisdiction over defendants on identical bases in this Court.

In their special appearance before the Prince William County Circuit Court, defendants generally denied that the state court had jurisdiction over them, thereby denying personal jurisdiction under both the Virginia long arm statute and ILSA. See Dkt. No. 36 at 1-2 (Motion to Challenge Jurisdiction).[10] In light of the pleadings submitted by plaintiffs and defendants' general denials of those arguments, plaintiffs' contention that the ILSA-based jurisdictional argument was not in issue before the state court is meritless. Moreover, the "actually litigated" requirement is meant to protect the party against whom collateral estoppel is asserted; here, plaintiffs raised

---

[10] Plaintiffs rely on Snead v. Bendigo, 240 Va. 399 (1991) for the proposition that "the absence of the term []15 U.S.C. § 1719 in any pleading filed by Defendants" in the state court precludes application of collateral estoppel. Snead is clearly distinguishable. There, the court addressed a statute that required, in an action on a note or contract, judgment to be entered in favor of the plaintiff unless the defendant "appears and pleads under oath denying that the plaintiff is entitled to recover." Id. at 401-02 (emphasis omitted). In Snead, the defendant did not meet his burden of filing a written document under oath or a counterclaim, and as such, all issues that were not included in plaintiffs' initial pleadings were not "actually litigated." Id. at 402. Here, however, the question of ILSA as a basis for jurisdiction was put in issue by plaintiffs' pleadings and defendants' denial of all bases for personal jurisdiction.

15

and argued the ILSA issue, but were ultimately unsuccessful.  By

finding that it could not exercise personal jurisdiction over

defendants, the Prince William County Circuit Court thus

rejected plaintiffs' theory that personal jurisdiction was

proper under either Virginia's long arm statute or ILSA.

In plaintiffs' last effort to avoid dismissal, they argue

that even if the doctrine of collateral estoppel applies, the

Court should find that it has personal jurisdiction over the

defendants because plaintiffs have alleged sufficient new facts

in their federal complaint to satisfy the Due Process Clause.

The only new allegation to which plaintiffs' counsel points is a

single paragraph in the complaint referring to Gabriel Real

Estate Financial Services, Inc.  That paragraph states

> While each of the HUD-1 Settlement Statements [attached as
> Exhibits 5-14] recite on Line 701 that the sales commission
> was paid to Garbriel [sic] Real Estate Financial Services,
> Inc. ("Gabriel"), Gabriel acted as a straw or sham agent to
> permit TRM to receive the commissions so that no
> information pertaining to TRM would appear on the
> respective HUD-1 Settlement Statements in violation of the
> Residential Settlement Procedures Act.

Compl. ¶ 37.[11]  These allegations do not constitute sufficient

new facts to overcome the state court's finding of no personal

---

[11] Gabriel is also referenced in paragraph 61 of the complaint,
which describes the commission to TRM as being "paid through
Gabriel as an intermediary, and the commissions were treated by
LDSCG and MCP as credit by TRM as a payment under the MCP Note
obligation."  Compl. ¶ 61.  Plaintiffs do not argue that this
allegation is a new fact that establishes personal jurisdiction
over defendants.  As with paragraph 37, the allegation in

jurisdiction.  First, neither paragraph 37 nor the HUD-1

Settlement Statements described in that paragraph state that

Gabriel is located in Virginia.  Moreover, as defendants

correctly note, paragraph 37 does not even mention any conduct

by either of the defendants nor does it allege any contact

between defendants and Gabriel.  If defendants' connection with

Total Realty Management (located in Virginia) as alleged

elsewhere in the complaint is insufficient to establish personal

jurisdiction, it strains credulity to think that a single line

item referencing Gabriel—an unknown entity—on settlement sheets

would meet the constitutional requirement.

At oral argument, the Court afforded plaintiffs' counsel

the opportunity to argue whether defendants had additional

contacts with Virginia relating to plaintiffs Brower and Viola,

who were not parties in the state court action, to justify

exercising jurisdiction as to these plaintiffs' claims.  Again,

plaintiffs' counsel relied on paragraph 37 of the complaint

regarding Gabriel Real Estate Financial Services.  As discussed

above, this allegation is wholly insufficient to establish

---

paragraph 61 does no more than link defendants with TRM, a
relationship already raised before and rejected by the state
court as an insufficient basis for jurisdiction.  Again,
paragraph 61 does not state that Gabriel is located in Virginia,
and during oral argument it was established that Gabriel is
actually a South Carolina entity.

17

personal jurisdiction over these defendants, and counsel has not pointed to any additional distinguishing facts.

## IV. CONCLUSION

For the reasons discussed above, the portion of defendants' current motion seeking reconsideration will be granted and the previous Order, which denied the defendants' first motion to dismiss for lack of personal jurisdiction, will be vacated. Accordingly, the claims asserted by the nine plaintiffs, Bret Anderson, Julie Day, Michael Harris, John Herlihy, Theodore Hooten, Chris Martin, Cathy Pugsley, Robert Sciabica, and Christine Sciabica, who were parties to the Prince William County litigation, will be dismissed for lack of personal jurisdiction due to the preclusive effect of the state court's finding of no personal jurisdiction.[12] The claims asserted by

---

[12] Plaintiffs try to argue that defendants have waived any objection to personal jurisdiction. They raised this issue in their opposition to defendants' first motion to dismiss and now argue further that defendants have consented to personal jurisdiction by appearing for the initial pretrial conference before a magistrate judge.

Regarding the issue raised in their first opposition, plaintiffs claim that, because LeGrand challenged personal jurisdiction before being served with the summons and complaint, he has "voluntarily appeared before this Court" and therefore cannot challenge personal jurisdiction. Plaintiffs seem to contend that, because LeGrand was not compelled to appear, he is prohibited from making a special appearance, but cite no authority for this proposition. Defendants persuasively draw an analogy to the waiver of service provisions of Rule 4(d). Rule 4(d)(5) states that a defendant who waives service does not waive objections to personal jurisdiction or venue. It cannot

plaintiffs Brower and Viola will also be dismissed because,

after having the opportunity to fully brief and orally argue

their bases for personal jurisdiction, these plaintiffs have

failed to allege sufficient facts to overcome the strong

principles of comity counseling deference to the state court

decision or that otherwise establish personal jurisdiction.

Had the Court been aware of the Prince William County

Circuit Court decision at the time of defendants' first motion

to dismiss, it would not have found personal jurisdiction over

these defendants, due not only to the  preclusive effect of the

state court decision but also in consideration of principles of

comity.  Accordingly, an Order will be issued along with this

Memorandum Opinion that will dismiss all counts without

prejudice, which will allow plaintiffs to refile their claims

against these defendants in a court that has personal

---

be said that LeGrand is submitting to the jurisdiction of the
court when he is in fact challenging the very basis of that
jurisdiction at the first opportunity to do so.  Accordingly,
plaintiffs' claim that LeGrand cannot challenge personal
jurisdiction because he has not been served fails.

Moreover, defendants correctly argue that they have properly
challenged personal jurisdiction by a Rule 12(b)(2) motion.
Plaintiffs cannot plausibly contend that, once a defendant's
motion to dismiss for lack of personal jurisdiction has been
denied, a defendant should refuse to comply with court orders so
as to "preserve" an objection to personal jurisdiction.
Defendants were ordered to appear for their initial pretrial
conference before a magistrate judge [Dkt. No. 6].  As
defendants correctly argue, to have refused to comply with the
Court's Order would have exposed them to entry of default
judgment or sanctions.

jurisdiction over the defendants.  This decision renders moot
the other issues in defendants' motion.

    Entered this _17th_ day of February, 2012.


Alexandria, Virginia


                                        /s/
                              Leonie M. Brinkema
                              United States District Judge